

# SUPREME COURT OF MISSOURI
# en banc

STATE OF MISSOURI,              )
)
          Respondent,       )
)
v.                      )      No. SC93555
)
KARTEZ HARDIN,         )
)
          Appellant.        )
)

### APPEAL FROM THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
The Honorable Angela Turner Quigless, Judge

### *Opinion issued April 29, 2014*

Appellant Kartez Hardin appeals from his convictions for forcible rape, aggravated stalking, and violating a protective order, claiming that his sentence for forcible rape exceeds the maximum sentence for that offense and that his convictions for aggravated stalking and violating a protective order violate double jeopardy. The judgment is affirmed.

### Factual and Procedural Background

In November 2010, Hardin's wife, H.H., obtained an ex parte order of protection after repeated instances of domestic violence. Hardin was served with notice of the protective order. Then, on December 4, Hardin abducted H.H. and her son and raped her.

1

After Hardin was arrested, he violated the protective order five times by calling or writing H.H. from jail.

Hardin was charged with 14 offenses, including one count of forcible rape, one count of aggravated stalking, and five counts of violating a protective order. He was convicted and sentenced on all counts. He now appeals.[1]

**Sentence for Forcible Rape**

Hardin was sentenced to a 50-year term of imprisonment for forcible rape under section 566.030.2, RSMo Supp. 2009, which provides that "[f]orcible rape . . . is a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years . . . ." He claims his sentence exceeds the maximum sentence for this offense. Although he failed to preserve the issue for appeal by not objecting at the sentencing hearing, being sentenced to a punishment greater than the maximum sentence for an offense constitutes manifest injustice or miscarriage of justice meriting plain error review. *See* Rule 30.20; *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010).

Hardin contends that section 566.030.2 authorizes a range of punishment from 5 years to life imprisonment. His proposed reading, however, is inconsistent with the statute's plain language. To determine what punishment is authorized by the statute, this Court looks first for the legislature's intent as reflected in the plain and ordinary meaning of the statute's words. *Severe*, 307 S.W.3d at 643. Each word or phrase must be given meaning if possible. *State v. Moore*, 303 S.W.3d 515, 520 (Mo. banc 2010). If the plain

---

[1] This Court granted transfer after an opinion by the court of appeals. Mo. Const. art. V, sec. 10.

language of a criminal statute is ambiguous, it will be construed in the defendant's favor. *State v. Liberty*, 370 S.W.3d 537, 547 (Mo. banc 2012).

Section 566.030.2 authorizes a sentence of "life imprisonment or a term of years not less than five years." The two phrases describing the authorized term of imprisonment—"life imprisonment" and "a term of years not less than five years"—are separated by the word "or." The plain and ordinary meaning of "or" is disjunctive, and its use indicates the legislature's intent that sentencing courts may sentence defendants to *either* life imprisonment *or* a term of years not less than five years. *See Council Plaza Redevelopment Corp. v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969) ("The disjunctive 'or' . . . in its ordinary sense marks an alternative which generally corresponds to the word 'either.'").

Hardin's proposed reading is inconsistent with this plain language. He would rewrite section 566.030.2 to read "life imprisonment *to* a term of years not less than five years," inserting the preposition "to" where the legislature used the disjunctive "or." But "[t]his Court enforces statutes as they are written, not as they might have been written." *Turner v. Sch. Dist. of Clayton*, 318 S.W.3d 660, 667-68 (Mo. banc 2010). Further, if the legislature intended to authorize a sentence of a limited term of years, it could have done so. *See, e.g.*, section 589.425, RSMo Supp. 2006 (authorizing a sentence "of not less than ten years and not more than thirty years"). It could have also authorized a sentence of life imprisonment *or* a sentence of a limited term of years. *See* section 558.011.1(1), RSMo 2000 (authorizing a sentence of "a term of years not less than ten years and not to exceed thirty years, or life imprisonment"). Here, however, the legislature chose two

3

types of sentences—(1) life imprisonment and (2) a term of years limited only by a statutory minimum—and linked them by the word "or." The plain and ordinary meaning of this language in section 566.030.2 provides sentencing courts with two options: life imprisonment or an unlimited term of years not less than five years. *See State v. Maples*, 306 S.W.3d 153, 157 & n.4 (Mo. App. 2010).

Hardin argues that this reading of section 566.030.2 renders the phrase "life imprisonment" meaningless. The crux of his argument is that "life imprisonment" and an unlimited term of years are identical sentences. This may be true in some cases; for example, a 100-year sentence and a sentence of life imprisonment may both result in the prisoner being incarcerated for the remainder of his life. But this is not true with every sentence of a term of years not less than five years. For example, a sentence of 40 years could result in the prisoner being released during his lifetime. A life sentence and a sentence of a term of years also have different consequences for parole. Under section 558.019.4, RSMo 2000, for parole purposes, a life sentence is calculated to be 30 years, while any sentence greater than 75 years is calculated to be 75 years. Regardless, the plain and ordinary meaning of the statute indicates that the legislature intended to give sentencing courts two options—life imprisonment or an unlimited term of years not less than five years—and this plain meaning is supported by the differences between the two options.

Hardin points out that court of appeals decisions have stated that life imprisonment is the maximum sentence authorized by section 566.030. He relies principally on *State v. Williams*, 828 S.W.2d 894 (Mo. App. 1992), in which the court of appeals held that a

4

100-year sentence exceeded the statutory maximum because "[t]he maximum sentence authorized for forcible rape . . . under section 566.030 is life imprisonment." *Id.* at 903. *See also State v. Anderson*, 844 S.W.2d 40, 42 (Mo. App. 1992).[2] *Williams* and *Anderson*, however, offered no reasoning to support their holdings. In light of the plain language of section 566.030.2, these cases are unpersuasive. Insofar as they suggest that section 566.030.2 does not authorize a sentence of an unlimited term of years, they should no longer be followed.[3]

Hardin further argues that "life imprisonment" should be construed to mean 30 years; thus, his 50-year sentence exceeds the statutory maximum. He bases this argument on section 558.019.4, RSMo 2000, which provides that "[a] sentence of life shall be calculated to be thirty years" for parole eligibility purposes. This argument is without merit: first, because the plain language of section 566.030.2 authorizes a sentence of an unlimited term of years and, second, because section 558.019.4 is not applicable in this case. Section 558.019 is a parole eligibility statute, and by its own terms it does not apply to section 566.030.

---

[2] *Williams* and *Anderson* cite to *State v. Charron*, 743 S.W.2d 436, 438 (Mo. App. 1987), and *Toney v. State*, 770 S.W.2d 411, 414 (Mo. App. 1989), both of which remarked, without further analysis, that section 566.030 authorizes a maximum punishment of life imprisonment. Neither case, however, specifically stated that the statute does not authorize a sentence of an unlimited term of years or held that a sentence of a term of years exceeded the statutory maximum.

[3] Hardin also quotes the statement in *State v. Davis*, 867 S.W.2d 539, 542 (Mo. App. 1993), that under section 566.030.2, "the unclassified felony of forcible rape is punishable by life imprisonment or a term of years not less than five years and not greater than thirty years." This statement, however, refers to a prior version of the statute. *See* section 566.030.2, RSMo Supp. 1993 (authorizing a sentence of "life imprisonment or a term of years not less than five years *and not greater than thirty years*") (emphasis added).

Finally, Hardin contends that the rule of lenity requires this Court to construe section 566.030.2 in his favor. But the rule of lenity applies only when a statute is ambiguous. *Liberty*, 370 S.W.3d at 547. Here, the plain meaning of section 566.030.2 is clear. It unambiguously authorizes a life sentence or a sentence of an unlimited term of years not less than five years. Hardin's claim is without merit.

## Double Jeopardy

Hardin next claims that his convictions of five protective order violations and aggravated stalking based on the same conduct violated double jeopardy. While he also failed to preserve this issue, an alleged double jeopardy violation that may be determined from the face of the record is entitled to plain error review. *State v. Neher,* 213 S.W.3d 44, 48 (Mo. banc 2007). The record here permits such review.[4]

The federal double jeopardy clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. It provides two basic protections: it protects defendants from successive prosecutions for the same offense after acquittal or conviction and it protects defendants against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Hardin's case implicates this second protection because he was convicted of aggravated stalking and violating a protective order at a single trial. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more

---

[4] The State conceded this point in its brief. Nevertheless, parties cannot stipulate to legal issues, and this Court is not bound by the Attorney General's confession of error. *Junior College Dist. of St. Louis v. City of St. Louis*, 149 S.W.3d 442, 446 n.1 (2004); *State v. Tipton*, 271 S.W. 55, 61 (Mo. 1925). After this Court determined this issue deserved further consideration, the parties were given the opportunity to file supplemental briefs.

than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). "Double jeopardy analysis regarding multiple punishments is, therefore, limited to determining whether cumulative punishments were intended by the legislature." *State v. McTush*, 827 S.W.2d 184, 186 (Mo. banc 1992).

This inquiry begins with the statutes under which Hardin was convicted and sentenced. *Id.* at 186. As is often the case, however, the statutes defining the offenses of aggravated stalking, section 565.225.3, RSMo Supp. 2009, and violating a protective order, section 455.085.2, RSMo 2000, are silent as to whether the legislature intended cumulative punishments for these offenses. In the absence of an offense-specific indication of legislative intent, the legislature's general intent regarding cumulative punishments is expressed in section 556.041, RSMo 2000. *Id.* at 187. It provides:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
> (1) One offense is included in the other, as defined in section 556.046; or
> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Section 556.041 expresses the legislature's general intent to impose cumulative punishments unless the offenses at issue fall into one of the statute's exceptions. *McTush*, 827 S.W.2d at 188.

7

Hardin contends that the first exception, for "included" offenses, applies in this case. That exception points to section 556.046.1, RSMo Supp. 2001, which sets out three situations in which one offense is "included" in another:

> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
> (2) It is specifically denominated by statute as a lesser degree of the offense charged; or
> (3) It consists of an attempt to commit the offense charged or to commit an offense otherwise included therein.

Turning again to the offenses at issue in this case, it is clear that subdivisions (2) and (3) do not apply. Neither aggravated stalking nor violating a protective order is denominated a lesser degree of the other, and neither offense consisted of an attempt to commit the other. Hardin's claim rests on subdivision (1).

Section 556.046.1(1) sets forth the definition of a lesser-included offense. *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002). It sets up an elements test, under which the elements of the offenses at issue are gleaned from the statutory provisions and compared. *See State v. Williams*, 313 S.W.3d 656, 659 (Mo. banc 2010); *Derenzy*, 89 S.W.3d at 474; *McTush*, 827 S.W.2d at 188. "If each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes." *McTush*, 827 S.W.2d at 188. "An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser." *Derenzy*, 89 S.W.3d at 474.

Analysis begins with the statutes under which Hardin was convicted and sentenced. Aggravated stalking is, essentially, an aggravated form of stalking. A person

commits the offense of stalking if he "purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person." Section 565.225.2. A person commits the offense of aggravated stalking, on the other hand, if he commits the offense of stalking and his course of conduct includes one of five aggravators:

> A person commits the crime of aggravated stalking if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person, and:
> (1) Makes a credible threat; or
> (2) At least one of the acts constituting the course of conduct is in violation of an order of protection and the person has received actual notice of such order; or
> (3) At least one of the actions constituting the course of conduct is in violation of a condition of probation, parole, pretrial release, or release on bond pending appeal; or
> (4) At any time during the course of conduct, the other person is seventeen years of age or younger and the person harassing the other person is twenty-one years of age or older; or
> (5) He or she has previously pleaded guilty to or been found guilty of domestic assault, violation of an order of protection, or any other crime where the other person was the victim.

Section 565.225.3. For purposes of both offenses, "harass" means "to engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person under the circumstances to be frightened, intimidated, or emotionally distressed." Section 565.225.1(3). A "course of conduct" requires proof of "a pattern of conduct composed of two or more acts." Section 565.225.1(1).

Section 455.085 sets out the elements needed to prove a violation of an order of protection. A person commits the crime of violating an order of protection when "a party, against whom a protective order has been entered and who has notice of such order entered, has committed an act of abuse in violation of such order." Section 455.085.2.

9

Under a straightforward application of section 556.046.1(1)'s lesser-included offense definition, violating a protective order is not "included" in the offense of aggravated stalking. Aggravated stalking requires proof of a course of conduct composed of two or more acts, while a protective order violation may be proven by a single act of abuse in violation of the protective order. A protective order violation, on the other hand, requires proof that the respondent's act violated an existing order of protection, while aggravated stalking may be proven without demonstrating a protective order violation. Each offense requires proof of an element the other does not.

Hardin, however, urges that it is impossible to commit aggravated stalking without violating the order of protection. He is incorrect. It *is* possible to commit aggravated stalking without violating an order of protection: a defendant may commit aggravated stalking by making a credible threat, for example, or by violating a condition of his probation or parole. Hardin assumes that, for purposes of lesser-included offense analysis, the elements of aggravated stalking include one of the five aggravators listed in section 565.225.3, namely the aggravator on which the State relied to establish the offense, and *only* that aggravator. In other words, he assumes that whether the offense of violating a protective order is included in the offense of aggravated stalking depends on how the latter offense is indicted, proved, or submitted to the jury.[5]

---

[5] Hardin relies principally upon *State v. Smith*, 370 S.W.3d 891 (Mo. App. 2012), which made this same assumption. *See id.* at 895. For the reasons stated in this opinion, this assumption is erroneous, and *Smith* should no longer be followed.

10

Hardin's assumption does not comport with this Court's historical understanding of lesser-included offenses.  Prior to section 556.046.1(1)'s enactment, Missouri courts used a definition of lesser-included offenses that is similar to the statute's language:

> If the greater of two offenses includes all of the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not necessarily included in the greater.

*State v. Smith*, 592 S.W.2d 165, 166 (Mo. banc 1979) (quoting *State v. Amsden*, 299 S.W.2d 498, 504 (Mo. 1957)).  This definition focused on the elements of the statutes defining each offense.  *Id.*  Further, an indictment-based application of this definition has been expressly rejected.  In *Smith*, this Court held that the definition of a lesser-included offense quoted above called for courts to "compare the Statute of the greater offense with the factual and legal elements of the lesser offense," not "compare the Charge or averment of the greater offense with the legal and factual elements of the lesser offense." *Id.*  Section 556.046.1(1) effectively codifies this definition, along with its "statutory elements" test.  *State v. Baker*, 636 S.W.2d 902, 904 (Mo. banc 1982); *Smith*, 592 S.W.2d at 166.[6]

This long-running understanding of lesser-included offenses directs the analysis in this case.  Aggravated stalking requires proof that the defendant purposely engaged in a course of conduct harassing (or intending to harass) another person.  Thus, aggravated

---

[6] Section 556.046.1(1) also closely tracks the language of the lesser included defense definition developed by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  That Court also uses the *Blockburger* test to determine whether two offenses are the "same offense" for double jeopardy purposes.  *United States v. Dixon*, 509 U.S. 688, 704 (1993).  With respect to cumulative punishments imposed at a single trial, however, the *Blockburger* test is merely a tool of statutory construction to determine legislative intent.  *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).

stalking includes the offense of stalking because stalking also requires proof of those same facts and no others. On the other hand, aggravated stalking *may* be established by proof of a protective order violation, but it may also be established by proof of other facts. A protective order violation is not a fact proof of which is required to establish commission of aggravated stalking. Aggravated stalking does not, therefore, include the offense of violating a protective order. Hardin's convictions for aggravated stalking and violating a protective order did not violate double jeopardy.

## Conclusion

The trial court's judgment is affirmed.


_____
Mary R. Russell, Chief Justice

All concur.